Elza McClelland

*v.*

Mary McClelland *et al.*

*Opinion filed October 24, 1898.*

1. Equity—*equity will set aside deed made in consideration of support where the consideration has failed.* A bill in equity will lie to set aside a deed made by an aged father and mother, conveying their homestead and farm to their son in consideration of his furnishing them a comfortable home and support during the remainder of their lives, where the latter fails to keep his agreements in that regard.

2. Change of Venue—*motion for change of venue must be made and pressed at earliest possible moment.* A motion for a change of venue must be made and pressed at the earliest possible moment, and it is not reversible error to deny such a motion made some three years before, during which time the parties had taken testimony before the master, where it does not appear that the motion was ever called up during that period.

Writ of Error to the Circuit Court of DeKalb county; the Hon. Charles Kellum, Judge, presiding.

This is a bill, as originally filed and as subsequently amended, against the plaintiff in error, Elza McClelland, for the purpose of setting aside a deed, executed by Mary McClelland and Mason McClelland, her husband, the mother and father of plaintiff in error, to the plaintiff in error on January 22, 1889, conveying to him a farm of fifty-two acres of land in DeKalb county. The object of the bill is not only to set aside and declare void the said deed as a cloud upon the title, but also to obtain an accounting with the plaintiff in error with reference to the use and occupancy of the premises and the use of certain stock thereon; and also for the purpose of obtaining a decree against the plaintiff in error for such amount as may be found to be due upon such accounting. The original bill in the case was filed on October 11, 1893, returnable to the February term, 1894, by Mary McClelland. Subsequently on June 5, 1894, Mary McClelland died tes-

tate at the age of seventy-seven years, and by her will left all the residue of her estate, both real and personal, after the payment of her debts and funeral expenses, to her husband, Mason McClelland. Her will was admitted to probate in the county court of DeKalb county on June 21, 1894. Mary McClelland in her lifetime was the owner of the fifty-two acres of land conveyed to her son, the plaintiff in error, Elza McClelland, by the deed of January 22, 1889, in the execution of which her husband, Mason McClelland, joined with her. After the death of Mary McClelland, her death was suggested, and Mason McClelland, her devisee and executor, was substituted as complainant in the bill in the place of the said Mary McClelland, deceased. Answer was filed by Elza McClelland to the original bill and also to the amended bill. Replications were duly filed to the answers.

On February 27, 1894, Elza McClelland, plaintiff in error here and defendant in the court below, filed and entered of record in said circuit court in said cause a notice, that he would apply for a change of venue of the cause, and an acknowledgment of the service of said notice, and a petition for such change of venue, together with an affidavit to said petition. The notice was dated February 26, 1894, and stated that plaintiff in error would on Tuesday, February 27, 1894, on the coming in of court, make application to the court for a change of venue in said cause on the ground that the presiding judge of said court was prejudiced against him. Service of said notice by a copy was accepted on the same day, to-wit, February 26, 1894. The petition, dated February 26, 1894, and sworn to on that day by the plaintiff in error, represented to the court, that the plaintiff in error feared and believed that he would not receive a fair trial of the said cause in said court, because the said judge was prejudiced against him; and further represented, that the knowledge of such prejudice first came to the petitioner on February 26, 1894, in the afternoon of that day, and that, at that

time, petitioner caused to be served upon the solicitor of the complainant, Mary McClelland, said notice which was attached to and made a part of the petition. The record shows on February 27, 1894, the following, to-wit: "And now on this day comes the said defendant and moves the court for a change of venue in this cause." On April 6, 1897, at the February term, 1897, of said court, the record recites, that the parties came by their respective solicitors, and that the defendant's petition for a change of venue, filed on February 27, 1894, was by the court denied.

At the October term, 1895, to-wit, on December 9, 1895, the cause was, on the motion of the complainant, referred to a master in chancery, by the name of Lowell, to take the proofs in said cause, and report the same to the court, with his findings and conclusions of law. At the February term, 1897, it appeared that the said Lowell, the master in chancery, was unable to report in said cause on account of ill-health, and he was thereupon ordered to report the proofs taken by him in said cause which was done. It appeared that the proofs were closed, and no more testimony was to be taken, and it was thereupon ordered by the court on March 19, 1897, that said cause be referred to one Smith, as special master, to examine the proofs so taken, and report the same to the court, together with his findings and conclusions of law and fact.

The special master examined such proofs, and made a report, setting forth his findings and conclusions of fact and of law. The defendant presented to the master six objections to the report, which were overruled by the master. On April 6, 1897, the master filed his report in the office of the clerk, and it was agreed that the objections so filed should be considered by the court as exceptions to the report. On April 9, 1897, the exceptions were heard by the court, and, after hearing had upon the pleadings and proofs taken by the master and heard in open court, and upon argument of counsel, the exceptions

were overruled; and the court entered a decree sustaining the conclusions of fact as found by the special master, and also finding that the equities of the case were with the complainant below, the defendant in error here, and that said deed ought to be set aside and declared void. By the decree the report was approved, and the plaintiff in error ordered to pay the costs. By the terms of the decree the cause was referred to said Smith, as special master, to take proofs, and state an account between the parties to commence on December 23, 1893, crediting the plaintiff in error with expenditures for improvements upon the premises and for taxes, and for all sums paid by him for either Mary McClelland or Mason McClelland, and for funeral expenses, and for any tombstone that he may have erected; and crediting him with any sums paid by him and credited upon the mortgage upon said premises; and charging the plaintiff in error with reasonable rents, issues and profits of the premises from December 2, 1893, up to the time of making such account, etc. The present appeal is prosecuted from the decree so entered by the circuit court.

Jones & Rogers, for plaintiff in error.

W. C. Kellum, for defendants in error.

Mr. Justice Magruder delivered the opinion of the court:

Mary McClelland and Mason McClelland were the mother and father of the present plaintiff in error, Elza McClelland. The deed, executed on January 22, 1889, by Mary McClelland, the owner of the fifty-two acres of land, and her husband, Mason McClelland, to the plaintiff in error, their son, was a warranty deed, conveying the fifty-two acres in question, and reciting upon its face that the consideration of making the same was the sum of $2500.00. The real consideration, however, of the deed was, that plaintiff in error should furnish to Mary McClel-

land and her husband for and during their natural lives, and during the life of the survivor of them, a good home and board, necessary clothing suitable to their condition in life, necessary medical aid, and the necessary services for carrying out such provisions; and that, upon their decease, he was to give them respectively decent interment, and erect a suitable tombstone to their memories; and the grantors in the deed were to have the right to keep their own horse, carriage and harness on said premises free of charge. On the same day, on which the deed was executed, a lease was executed by said Elza McClelland to his mother and father, leasing said premises to them for the term of their natural lives and during the life of the survivor of them, and reciting therein that, in consideration that Mary McClelland and Mason McClelland executed to the plaintiff in error said warranty deed, plaintiff in error agreed to furnish them a good home and board at his own expense, etc., as above stated.

In his report, the special master finds that, under said agreement, plaintiff in error entered into possession of the premises in the fall of 1889, and has been in possession of the same ever since, and has received the rents and profits thereof, and that the rental value of the premises is $3.50 per acre per annum. The report of the special master further finds, that the deed was, on the day of its execution, and in pursuance of an agreement between the parties, placed in the hands of one Nelson Sivwright to be held by him unrecorded until the death of both of the grantors; that, on December 24, 1892, said Sivwright, at the request of Mary McClelland and with the knowledge of the plaintiff in error, but without the knowledge or consent of Mason McClelland, caused the deed to be recorded in the recorder's office of DeKalb county; that Mary McClelland died on June 5, 1894, testate, and leaving a will, in which she made her husband her sole devisee and executor; that the plaintiff in error before December 24, 1892, or January 1, 1893, furnished his mother board,

and medical aid, and services, and clothes suitable to her condition in life; and after her death gave her decent burial, and had made arrangement for a monument to be erected on her grave; but that the plaintiff in error did not, in accordance with his agreement, furnish his father, Mason McClelland, with sufficient clothes, and was not willing that his father should make his home on the premises with his wife, and ordered his father, Mason McClelland, to leave the same, and told him that he would not have his horse upon the premises. The master finds in his report, that plaintiff in error did not furnish either Mary McClelland or Mason McClelland a good home after January 1, 1893; that he refused to permit their children to visit them at their home, and used abusive and profane language to them, and at a time when his mother was sick; that he used vulgar and profane language in their presence, and rendered their home so unpleasant, that on December 2, 1893, they removed therefrom, and went to the home of their son, James McClelland, where the mother died as above stated; that after December 2, 1893, plaintiff in error in no way contributed to the support of either Mary McClelland or Mason McClelland, except to furnish some underclothing for his mother, but he furnished medical aid and paid the funeral expenses. The special master in his report found the equities in the case to be with the complainants, and that the deed dated January 22, 1889, should be set aside and declared void. The master also found in his report that, when said conveyance was executed to the plaintiff in error, there was a mortgage upon the premises; that the conveyance was not made subject to the mortgage; that complainants never paid the mortgage or any part thereof; that the plaintiff in error paid $275.00 upon the said mortgage; that plaintiff in error paid certain specified amounts for funeral expenses of his mother, and for a monument to her memory, and for medical treatment during her last sickness.

While there is much conflict in the testimony in the present case, we are not prepared to say that the findings made by the court below are not sustained by the evidence. Some of the witnesses, testifying in behalf of the plaintiff in error, state that his conduct towards his mother was unobjectionable, so far as they observed it. It would appear, however, that his kindness to her was for the most part prior to the time when the deed in question was filed for record, to-wit, on December 24, 1892. Prior to this time, to-wit, on August 16, 1892, his father left the premises, and remained away until January, 1893, but returned in January, 1893, and remained until December 2, 1893, when both he and his wife were obliged to leave the premises. The conviction forced upon the mind by reading the testimony is, that the conduct of the plaintiff in error towards his mother changed after she had directed the custodian of the deed to record it. Mason McClelland, defendant in error, had dower and a homestead right in the premises. The recording of the deed was without his consent. Viewing the testimony of the witnesses, so far as it is favorable to the plaintiff in error, as having relation to occurrences which preceded the recording of the deed, we are of the opinion that the findings of the special master and the decree of the court below are sustained by the testimony, so far as it relates to the conduct of the plaintiff in error after the recording of the deed. The case, therefore, is one where an aged father and mother deeded to their son their homestead farm in consideration of his furnishing them a home and support during the remainder of their lives respectively. The evidence shows, that he did not keep his agreement with them in this regard, but treated them with such unkindness as to force them to leave their home. Under these circumstances, it is well settled by the decisions of this court that a bill will lie to set aside a deed executed for such a consideration.

In *Frazier* v. *Miller*, 16 Ill. 48, where one Miller and his wife conveyed all his real and personal property to one Frazier upon condition that Frazier should support and take care of Miller and his wife during their lives; and Frazier gave a bond to that effect, which he subsequently obtained possession of and withheld from Miller; and where Frazier did not perform his obligation, but greatly maltreated Miller and his wife; it was held that Miller might proceed in chancery to have the conveyance rescinded, and obtain other relief, etc. In the *Frazier case* it was urged, that there was a remedy at law for the recovery of damages upon the bond given, but the court held that an action on the bond was inadequate to furnish such relief as the party injured was entitled to have. The ground, upon which the jurisdiction of equity was there sustained, was that the circumstances justified the inference of an abandonment of the contract by Frazier, and a presumption of a fraudulent intent in entering into the contract. It was there said, that Miller had surrendered all home and property, at once, and become wholly dependent upon Frazier for a subsistence and shelter, as well as a house and domestic comforts, and enjoyments of society; and that to be treated with unkindness, harshness and blows, under these circumstances, as a fulfillment of the obligation for a house, shelter, food, raiment and social and domestic happiness, was more than human nature could bear or a court of equity could tolerate. It was also said in that case, that the contract on the part of Frazier was executory, and continued so on his part during the natural life of Miller and wife; and that what might be the cost of a support during one year might, with varying prices, be totally inadequate for another year, so that no assessment of damages could be made to meet the estimate of the cost of their support.

In *Oard* v. *Oard*, 59 Ill. 46, where the facts showed that a father, upwards of seventy years of age, induced by the promises of his son to support him and his wife in com-

fort during the remainder of their lives, conveyed his farm to his son's wife, and transferred to his son all his personal property; and the son took possession of the farm, and by his continued unkindness and ill-treatment, in about a year compelled his parents to leave and take refuge with another child, it was held that a bill would lie by the father to rescind the contract; and the case of *Frazier* v. *Miller, supra,* was referred to and approved, the court saying: "If the rescission of the contract cannot be referred to any other head of equity jurisdiction, it would be proper to presume that it was made in the first instance with a fraudulent intent."

In *Jones* v. *Neely,* 72 Ill. 449, it was again held, upon a similar state of facts, that the circumstances justified the inference of an abandonment of the contract and a presumption of fraudulent intent in entering into it.

Again in *Kusch* v. *Kusch,* 143 Ill. 353, we said (p. 356): "The doctrine is well established in this State, that where one conveys his real estate and property to another person, in consideration that such other person will support and maintain the grantor during his natural life, and the grantee afterwards refuses to perform his contract for such support and maintenance, a court of equity will grant relief by rescinding the contract and canceling the deed." The same doctrine was again announced by this court in the case of *Cooper* v. *Gum,* 152 Ill. 471.

It is said by counsel for the plaintiff in error, that the deed executed to the plaintiff in error was a warranty deed, and that there was a mortgage upon the premises at the time the deed was executed. It is argued from this circumstance, that defendant in error and his deceased wife were themselves in default in regard to the contract, and that the right to rescind belongs only to the party who is without default. (21 Am. & Eng. Ency. of Law, p. 77). We think the evidence shows, that the plaintiff in error knew of the existence of the mortgage when the deed was made to him, and accepted the prem-

ises subject to the encumbrance which was then upon it. He has paid certain amounts upon the mortgage, since he has been in possession, without objection, and without any complaint that he was doing more than he was required to do by his contract. In the accounting ordered by the court it is directed that he have credit for the payments made by him and credited upon the mortgage. The result of the accounting will be, that he will be reimbursed for his expenditures on account of the mortgage, so that, by the cancellation of the deed, he will not be injured in this regard.

It is furthermore said, that the defendant in error, after the death of his wife, directed a physician, who had attended upon his wife in her last sickness and presented a bill for his services, to call upon the plaintiff in error for the payment of such bill. It is claimed that the defendant in error, by this act, elected to treat the contract in full force. The argument made upon this branch of the case is, that a party having an election to rescind a contract must rescind it wholly or not at all; and that he will not be allowed to avoid the contract as to those parts which work him an injury, and confirm it as to those which are profitable to him. (21 Am. & Eng. Ency. of Law, p. 91; *Harzfeld* v. *Converse*, 105 Ill. 534). This principle has no application to the facts of the present case. The evidence tends to show, that the plaintiff in error was indebted to the defendant in error for rents and profits received by him on account of the use of the premises, and defendant in error could, therefore, with perfect justice refer the payment of the doctor's bill to the plaintiff in error as a debtor to the defendant in error in the manner stated. Inasmuch as the conduct of the plaintiff in error gives rise to the presumption of an abandonment of his contract and of a fraudulent intent in entering into it, he is estopped from urging that the defendant in error has elected to keep the contract in force. The right to relief in a court of equity in this class of cases is

based upon the considerations already mentioned, rather than upon the right to rescind for failure to carry out the terms of the contract by the opposite party.

Another objection urged in favor of the reversal of the decree of the lower court is, that error was committed in overruling the motion made by plaintiff in error for a change of venue. The petition and notice for change of venue were filed February 27, 1894, and nothing was done thereafter in reference to the same until April 6, 1897, a period of more than three years. We are of the opinion, that, on account of the long delay, the plaintiff in error waived his right to insist upon a change of venue. It has been uniformly held by this court, that a motion for a change of venue must be made at the earliest practicable moment, and not put off until just before the cause is to be called for trial. (*Hudson* v. *Hanson*, 75 Ill. 198; *Newlin* v. *Snyder*, 78 id. 528; *Crane* v. *Crane*, 81 id. 165). It is urged by the plaintiff in error that, according to the showing of the record as made on February 27, 1894, the plaintiff in error on that day moved for a change of venue. It may be that, when the petition for a change of venue was filed together with the notice to the other side that the same would be applied for, a motion for such change was entered of record. But it does not appear, that said motion was called up, or that the court was asked to act upon it until more than three years had elapsed. During this time plaintiff in error had appeared before the master and taken testimony, and had proceeded in all respects as though no change of venue was to be insisted upon. It is not sufficient merely that a motion for a change of venue should be made, but the motion must be "pressed." (*Hudson* v. *Hanson*, *supra*).

After a careful examination of the record, we find no sufficient reason for reversing the decree entered by the court below. Accordingly, the decree of the circuit court is affirmed.

*Decree affirmed.*