ISADORE OSSEY *et al. vs.* THE RETAIL CLERKS' UNION *et al.*—(THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.* HARRY WINNICK, Appellant.*)

*Opinion filed June 22, 1927—Rehearing denied October 5, 1927.*

1. INJUNCTION—*when motion for change of venue is properly denied—contempt.* A motion for change of venue in a proceeding to show cause why defendants should not be punished for contempt for violation of a preliminary injunction is properly denied where the petition is for a change of venue of the cause itself and not merely of the proceeding to punish for contempt and is not made until three days after the hearing has begun on the petition to show cause, some of the defendants having merely entered their appearance in the original cause, in which no further action was taken until the alleged violation of the injunction, nearly a year and a half later.

2. SAME—*when defendants charged with contempt in violating preliminary injunction cannot raise question of laches and abandonment of cause.* Defendants who merely entered their appearance in a proceeding to enjoin them from interference with the complainants' business by "picketing" in a labor dispute and did not question the validity of the preliminary injunction which was issued but allowed it to stand for a year and a half, when they

---

*With this case were consolidated the following cases: 17348, Same appellee v. Dora Entin; 17349, Same appellee v. Sam Waller; 17350, Same appellee v. Frank Boskey; 17351, Same appellee v. Morris Segal; 17352, Same appellee v. Sam Pessis; 17353, Same appellee v. Sidney Goldblatt; 17354, Same appellee v. Sam Krakow; 17355, Same Appellee v. Tom McGregor.

violated it, cannot, in a proceeding to show cause why they should not be punished for such violation, raise the question of *laches* and abandonment of the original suit by the complainants.

3. SAME—*act of 1925 does not prohibit injunction against picketing in labor dispute.* The act of June 19, 1925, providing that no one shall be enjoined from peaceably persuading others to quit their employment in a labor dispute does not prohibit an injunction against "picketing," which is generally understood in such cases to mean denying persons free access to their places of business and employment by intimidation and threats, as one's business is a property right and such conduct may be enjoined as an interference with a property right.

4. APPEALS AND ERRORS—*when Supreme Court will not pass on validity of statute.* The Supreme Court will not pass on the constitutionality of a statute unless its validity is necessarily involved in the case and a decision of the question is material to the determination of the issues raised.

APPEALS from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

WILLIAM E. RODRIGUEZ, (ANGUS KERR, JOHN M. HUMPHREY, and HAMLIN K. BUCHMAN, of counsel,) for appellants.

SCHOENBROD & ROSENGARD, (MYER N. ROSENGARD, EDWARD A. ZIMMERMAN, and AMOS C. MILLER, of counsel,) for the People.

COLIN C. H. FYFFE, as *amicus curiæ.*

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

On April 15, 1924, Isidore Ossey and Meyer Ossey, partners doing business as Ossey Bros. Department Store, filed in the superior court of Cook county a verified bill for an injunction against the Retail Clerks' Union, Local 195 of that union, the agents, officers, managers, representatives and members of the union and its local, and Harry Win-

nick and Abe Cooper, to restrain, among other things, interference with the complainants' property, business and customers in the prosecution of a strike called by the first named defendant. The bill alleges that the complainants conduct two retail stores in the city of Chicago, one at 1325-1333 South Halsted street and the other at 1235 South Halsted street, at both of which they sell men's and women's clothing and accessories; that the complainants have been engaged in that business for a considerable period and have established a good will of great value; that they carry a stock of merchandise worth from $100,000 to $150,000; that they own the buildings which they occupy and that their investment in merchandise, fixtures and buildings exceeds $400,000; that they employ sales persons and others, irrespective of whether they belong to a union or not; that the Retail Clerks' Union is a voluntary association composed of many persons whose names are unknown and who are too numerous to sue; that the individual defendants named in the bill are affiliated with that union and its Local 195 as members, directors and officers; that prior to January 1, 1924, the union decided to organize the retail clerks of the city of Chicago and compel the owners of retail stores in that city, and particularly in the vicinity of the complainants' places of business, to operate as union or closed shops; that few, if any, of the complainants' employees desired to join the union; that failing to accomplish its purposes by peaceable means, the union on April 12, 1924, called a strike of the clerks employed by the complainants, and for the purpose of making the strike effective the union and its local caused the complainants' places of business to be picketed by groups of from ten to twenty-five persons each; that the pickets watched all persons who entered and left the complainants' buildings and questioned them; that the pickets told the complainants' employees and applicants for employment that a strike was in progress and that they

would not be permitted to continue in the service of the complainants or to enter their places of business; that the pickets stopped and accosted all persons in or about the complainants' stores and prohibited them from buying merchandise; that the pickets used vile names, annoyed, humiliated and intimidated the complainants' employees and applicants for employment and put them in fear of assault or molestation if they disregarded the warnings given them, and that the picketing has continued since it was instituted. There follow in the bill allegations of specific acts by the pickets, such as shouting their demands, forcing satisfied employees to quit work through fear, creating disturbances in and about the complainants' places of business, blockading the doors thereto, preventing persons from going in and out and threatening them with physical injuries, and threatening the complainants with the destruction of their buildings and the ruination of their business. It is finally charged that the defendants are insolvent and the complainants have no adequate remedy at law, and that the wrongful acts and interferences specified will continue to the irreparable damage of the complainants unless the defendants be enjoined.

Upon application by the complainants, based on the bill and certain affidavits, and pursuant to notice, Judge Charles M. Foell on April 16, 1924, granted a preliminary injunction restraining the defendants (*a*) from picketing or maintaining any picket or pickets at or near any of the buildings in which the complainants operate their businesses; (*b*) from following, stopping involuntarily, assaulting, beating, threatening, menacing, intimidating, harassing, molesting or interfering with the complainants or any person employed by them or who seeks to enter their employment or who does or seeks to do business with them; (*c*) from calling upon or talking to any employee of the complainants against the manifest will of such employee; (*d*) from applying to any employee of the complainants any profane, insulting, humiliating or indecent epithet, name,

term or language; (e) from soliciting or inducing any person employed by the complainants to quit such employment; (f) from molesting, injuring, trespassing upon or interfering with any property owned, operated or used by the complainants or by any person employed by, or who does or seeks to do business with, the complainants; and (g) from threatening or participating in the doing of any of the things forbidden.

On the day the preliminary injunction was granted, the appearance of the union, its local, Winnick and Cooper was entered. No further action was taken in the suit until October 19, 1925, when a verified petition by Isidore Ossey, one of the complainants, was filed. The petition set forth that the preliminary injunction was still in force and unmodified and that acts of reprisals had been committed since its issuance; that on the 17th day of October Winnick and several other persons carrying signs reading, "Strike on, clerks stay away, this store unfair," paraded upon the sidewalks in front of and adjacent to the complainants' premises, and that certain persons who were given fictitious names in the petition because their true names were unknown but whom the petitioner could point out, continued to act as pickets with full knowledge and in direct violation of the injunction. The prayer of the petition was that the pickets be directed to show cause why they should not be attached for contempt of court. Notice of the filing of this petition was served upon counsel for the defendants. The rule to show cause was entered by Judge Denis E. Sullivan and made returnable on October 26, 1925. Before that day the solicitors for the defendants withdrew their appearance and other counsel were substituted. Certified copies of the rule to show cause were served upon the pickets, and for their failure to answer the petition their defaults were entered on the return day, October 26, 1925, and on the same day the bill of complaint was taken as confessed by the defendants thereto. On that

day, also, a verified supplemental petition by Isidore Ossey
was filed, which, after setting forth the true names of the
pickets who had been given fictitious names in the earlier
petition, charged that they continued the picketing of the
complainants' places of business and the carrying of signs
as before; that they had threatened prospective customers
and others with violence and were guilty of other acts of
intimidation, and that Winnick had committed an assault
upon one of the complainants. Two days later a motion
was made in behalf of Winnick, Sidney Goldblatt, Frank
Boskey, Sam Waller, Sam Krakow, Morris Segal, Sam
Pessis, Dora Entin and Tom McGregor to vacate the order
of default theretofore entered and to permit them to file
their answers to the rule to show cause why they should not
be punished for contempt. The motion was granted, and
on November 4, 1925, each of the respondents filed an an-
swer admitting that he or she peacefully picketed the com-
plainants' places of business, but that such picketing was
incidental to a strike which had arisen over a dispute be-
tween the complainants and the Retail Clerks' Union. The
other allegations of the petition were denied. The answer
of Winnick further averred that he was assaulted by Isi-
dore Ossey on October 21, 1925, in consequence of which
he was compelled to go to a hospital for treatment. On
motion, the defaults of the defendants to the bill of com-
plaint were set aside and they filed a joint and several an-
swer, denying the material allegations of the bill but ad-
mitting that a general strike of the complainants' employees
had been called on April 12, 1924, and that the places of
business of the complainants had been picketed by groups
of persons. Upon the assurance of the respondents' coun-
sel, made in open court on October 27, that the respondents
would appear upon the hearing on the original petition, the
court set that hearing on the 17th day of November. On
October 29, 1925, the respondents, nine in number, filed a
general and special demurrer to the supplemental petition

of the complainants, and the same respondents on that day petitioned for a change of venue of the cause. Six days later a change of venue was denied.

After the hearing, upon which considerable evidence was introduced, the court found that the respondents had violated the injunction and were guilty of contempt of court. Dora Entin was fined $25 and costs. Sam Waller, Frank Boskey, Sam Krakow, Tom McGregor and Sam Pessis were each fined $50 and costs and sentenced to the county jail for ten days. Morris Segal and Sidney Goldblatt were each fined $75 and costs and ordered imprisoned in the county jail for ten days. Winnick was fined $200 and costs and ordered committed to the county jail for thirty days. Each of the respondents was allowed a direct appeal to this court, the chancellor certifying that the validity of a statute was involved. These appeals are prosecuted separately, but since the questions raised are the same in each they will be considered together.

The appellants first contend that the chancellor who found them guilty of contempt of court erred in assuming jurisdiction of the cause. It is not denied that the superior court had jurisdiction of the subject matter of the suit, but the appellants intimate that when the complainants instituted the proceedings to punish for contempt they were allowed to select a judge who they thought would administer the law more harshly against the appellants than the judge who granted the injunction. The record affirmatively shows that the chancellor who found the respondents guilty of contempt of court had jurisdiction of the case, and there is no basis for the contention.

It is next insisted by the appellants that the allegations of the original petition to punish them for contempt, and the proof adduced in support of that petition, do not correspond. On the day the rule entered on the petition was made returnable, two women, customers of the complainants, then present in court and who did not wish to re-

turn, were called as witnesses. They testified to facts which occurred after the petition was filed, and the appellants' counsel refused to cross-examine them. The appellants had failed to answer the petition and were in default at the time. Later, upon their application the defaults were set aside and they were given additional time within which to answer. By their answers they admitted that they had violated, and were violating, the injunction. Evidence other than the testimony of the two witnesses was offered in support of the petition, and apart from that testimony it was clearly shown that the appellants had violated the injunction as charged in the petition.

Complaint is made that a change of venue was denied. The rule to show cause was entered on October 19, 1925, and it was made returnable six days later. Service of the rule was had on five of the appellants on October 20 and on the remaining four on the following day. The hearing began on the return day. Three days later the petition for a change of venue was presented. The prayer of that petition was for a change of venue of the cause itself and not merely of the proceeding to punish for contempt. While the appellants were not made defendants to the bill for injunction by name, they were the agents of the defendants named in the bill and as such were included as parties thereto. The application for a change of venue came too late, for it must be made at the earliest practicable moment. (*McClelland* v. *McClelland,* 176 Ill. 83; *Haley* v. *City of Alton,* 152 id. 113; *Crane* v. *Crane,* 81 id. 165; *Richards* v. *Greene,* 78 id. 525; *Hudson* v. *Hanson,* 75 id. 198.) Moreover, all of the defendants to the bill of complaint did not seek a change of venue. Hence there was no compliance with the statute in that respect. (Sec. 9 of the act entitled "An act to revise the law in relation to change of venue," Cahill's Stat. 1925, p. 2380.)

The appellants further contend that the complainants failed to prosecute their suit, and consequently that they

were guilty of *laches* and an abandonment of the suit. The injunction granted shortly after the suit was instituted was obeyed until October 17, 1925. Prior to that time the appellants did not question the validity or propriety of the injunction nor did they seek to evade its mandate. If the appellants had desired to raise an issue on the bill and to have that issue determined, they not only had the right but also the opportunity to do so. They took no such course but continued in default until they violated the injunction a year and a half after it was granted, when proceedings to enforce obedience to the writ were promptly instituted by the complainants. On the facts shown the appellants are not in position to raise the question of *laches* and abandonment of the original suit.

It appears from the evidence that on October 27, 1925, the appellant Winnick and several other persons appeared in front of the complainants' place of business at 1325-1333 South Halsted street and under Winnick's direction commenced picketing about three feet from the windows and entrances; that they carried signs bearing the announcement that a strike was on, the store was unfair and clerks should keep away; that the picketing continued until December 1, 1925, and all of the appellants participated in it; that early in the morning of October 18, 1925, a brick was thrown through one of the show windows; that the pickets crowded about the entrances to the store, making ingress and egress difficult and annoying, and accosted pedestrians and advised them not to trade with the complainants because a strike was in progress; that the pickets stopped and threatened customers with bodily harm in the event they attempted to enter the store; that customers were pushed, a woman's hat was knocked off, and a piece of cast iron was found inside the store near a broken window; that on October 21, 1925, a fight took place in front of the complainants' premises in which Winnick and other pickets participated; that while the complainants' building

was remodeled the business agent of the bricklayers' union threatened that the men employed upon it would leave unless the complainants entered into the agreement demanded by the Retail Clerks' Union, and that because the complainants refused to consummate the agreement the work was stopped; that prior to October 17, 1925, when the picketing began, the complainants had no controversy with their employees; that they had invested in their store and buildings upwards of $300,000, and that during the time the picketing continued the volume of their business was reduced more than one-half.

From the evidence introduced in behalf of the appellants it appears that demands had been made upon the complainants to sign the union's agreement but that they had refused to accede to the demands; that Dora Entin and Segal were the only appellants who had been employed by the complainants, and that they had not been so employed for more than a year prior to October 17, 1925. All of the appellants except McGregor, who did not testify, admitted that they picketed the complainants' place of business after they had acquired knowledge of the issuance of the preliminary injunction either by service of the writ upon them or from copies posted in the windows of the complainants' store, but they denied that they had resorted to force or intimidation to accomplish their purposes. They testified that picketing had been carried on pursuant to the advice of counsel and that Winnick had directed the picketing.

For immunity the appellants rely upon the act entitled, "An act relating to disputes concerning terms and conditions of employment," approved June 19, 1925, in force July 1, 1925, (Laws of 1925, p. 378,) which provides that "no restraining order or injunction shall be granted by any court of this State, or by a judge or the judges thereof in any case involving or growing out of a dispute concerning terms or conditions of employment, enjoining or restraining any person or persons, either singly or in concert, from

terminating any relation of employment or from ceasing to perform any work or labor, or from peaceably and without threats or intimidation recommending, advising, or persuading others so to do; or from peaceably and without threats or intimidation being upon any public street, or thoroughfare or highway for the purpose of obtaining or communicating information, or to peaceably and without threats or intimidation persuade any person or persons to work or to abstain from working, or to employ or to peaceably and without threats or intimidation cease to employ any party to a labor dispute, or to recommend, advise, or persuade others so to do." The complainants, on the contrary, assert that the act contravenes the due process and equality guaranties of the fourteenth amendment to the Federal constitution and certain provisions of the State constitution, and that it is an unwarranted invasion by the General Assembly of the constitutional powers and duties of the courts. In our view it is not necessary, in the cases before us, to determine the validity of the act and we refrain, therefore, from deciding that question. The rule is that this court will not pass on the constitutionality of a statute unless its validity is necessarily involved in the case and a decision of the question is material to the determination of the issues raised. *People* v. *Small,* 319 Ill. 437; *McEniry* v. *Tri-City Railway Co.* 254 id. 99; *Illinois Central Railroad Co.* v. *Chicago and Great Western Railway Co.* 246 id. 620; *Village of Morgan Park* v. *Knopf,* 199 id. 444.

The appellants, by their answers to the petition, admitted that they had picketed the complainants' store. The evidence clearly shows that the appellants obstructed the entrances to the store, and not only dissuaded customers from entering it but threatened them with harm if they did enter. The picketing continued more than six weeks. On the morning after it began a brick was thrown through one of the show windows. Later a piece of iron was found inside of and near a broken window, and a fight occurred,

in which Winnick, among others, took part. Pedestrians, employees and customers were intimidated. As the result of the picketing, and while it was in progress, the complainants' business was reduced at least one-half.

The statute upon which the appellants rely for immunity is substantially the same as section 20 of the act of Congress of October 15, 1914, known as the Clayton act. (38 U. S. Stat. at Large, p. 738.) That section forbids the granting of a restraining order or injunction by a Federal court or judge in labor controversies prohibiting "any person or persons, whether singly or in concert, from terminating any relation of employment, or from ceasing to perform any work or labor, or from recommending, advising or persuading others by peaceful means to do so; or from attending at any place where any such person or persons may lawfully be, for the purpose of peacefully obtaining or communicating information, or from peacefully persuading any person to work or to abstain from working; or from ceasing to patronize or to employ any party to such dispute, or from recommending, advising, or persuading others by peaceful and lawful means so to do." Under these provisions the Supreme Court of the United States held in *American Steel Foundries* v. *Tri-City Central Trades Council,* 257 U. S. 184, 66 Law ed. 189, that picketing in groups of from four to twelve near an employer's manufacturing plant during a strike, accompanied by attempts at persuasion or communication with persons entering or leaving the plant, resulting in intimidation of employees and prospective employees, and of obstruction of and interference with the business of the employer, was unlawful and might be enjoined. The court said: "The name 'picket' indicated a militant purpose, inconsistent with peaceable persuasion. The crowds they drew made the passage of the employees to and from the place of work one of running the gauntlet. Persuasion or com-

munication attempted in such a presence and under such conditions was anything but peaceable and lawful. When one or more assaults or disturbances ensued they characterized the whole campaign, which became effective because of its intimidating character, in spite of the admonitions given by the leaders to their followers as to lawful methods to be pursued, however sincere. Our conclusion is that picketing thus instituted is unlawful and cannot be peaceable, and may be properly enjoined by the specific term because its meaning is clearly understood in the sphere of the controversy by those who are parties to it." In support of its view the court cited numerous authorities, among them *Barnes & Co.* v. *Typographical Union*, 232 Ill. 424, and *Franklin Union* v. *People*, 220 id. 355.

The complainants' business is a property right, and free access to their places of business by the complainants, their employees and customers is an incident to that right. (*Truax* v. *Corrigan*, 257 U. S. 312, 66 Law ed. 254; *Anderson & Lind Manf. Co.* v. *Carpenters' Council*, 308 Ill. 488; *Mathews* v. *People*, 202 id. 389.) The appellants' intention to inflict loss upon the complainants and the consequent serious loss are clear. To accomplish their purposes the appellants resorted to obstruction, intimidation and violence. Even if the validity of the act invoked by the appellants be assumed, a question not now decided, it afforded them no immunity for their acts.

The orders of the superior court adjudging the appellants in contempt of court for their violations of the injunction are affirmed.

*Orders affirmed.*