ALLEN, Acting Chief Judge.
The appellant, as plaintiff in the lower court, filed an action for cancellation of a warranty deed which had been executed by O. J. Barksdale, deceased, to the appellee-defendants in exchange for the promise of defendants to support and care for the deceased. The complaint alleged that defendants had failed to care for and support the ' deceased; that deceased’s daughter, the plaintiff, had to take deceased and care for him until his death; and that therefore the deed should be cancelled as a result of a complete failure of consideration. The defendants filed a motion to dismiss after plaintiff had rested her case, on the grounds that plaintiff had an adequate remedy at law for damages; that the complaint fails to allege a cause of action against Wallace Sholar as he was not a grantee in the deed; and that therefore Wallace Sholar was improperly joined as a party-defendant. The court dismissed the cause with prejudice provided the defendants pay to the estate $582 within 60 days of the date of the decree. The plaintiff then filed this appeal.
In January, 1958, the defendants moved in with Mr. Barksdale, who at that time was 73 years of age. The defendants were to pay no rent but agreed to pay all the expenses of the home and to care for Mr. Barksdale. March 10, 1958, Mr. Barksdale and the defendant, Mrs. Sholar, went to an attorney’s office and a deed was executed conveying the property to Mrs. Sholar. The deed provided:
“It is understood and agreed by the parties hereto that for and in consideration of the party of the second part caring for and taking care of party of the first part, both in sickness and in health, paying all living expenses and all other expenses incurred both in sickness and in health, and the funeral and burial expenses upon the death of the party of the first part, giving to party of the first part a Christian funeral and burial suitable to his station in life, that the said party of the first part hereby and herein conveys to the said party of the second part the above described premises, reserving to himself a life estate in said premises and the right and use of the occupancy of the same so long as he shall live; that it is further agreed that should the said party of the second part fail or refuse to carry out the above mentioned conditions upon which this conveyance is based, then said consideration has failed and the said premises shall immediately revert to the party of the first part free of any *342 interest or claim that the said party of the second part may have in the same under this agreement.”
The plaintiff visited her father on July 31, 1958, and returned on another visit on August 5, 1958, at which time he appeared to be suffering from a fever. The daughter was quite upset and told the defendants she wanted to take her father back to her home in Bartow so that he could be properly cared for. There was testimony adduced which shows that the deceased named Mrs. Sholar as devisee of the property in a will on the same date the deed was executed; that the deceased subsequently named the plaintiff as sole heir under a later will; that the defendants drank alcoholic beverages and the defendant husband had been arrested for drunkenness while the deceased was being cared for by defendants; and that the plaintiff expended various sums for medical, hospital, food and funeral bills for the deceased. It was the sum of these bills that the trial court ordered the defendants to repay to plaintiff in refusing to set aside the deed.
There is evidence in the record that Mr. Barksdale told his daughter that the defendants were trying to take him to the hospital and he did not want to go to the hospital. Mrs. Ellis stated that she carried him back to her home in Bartow, placed him in the Bartow General Hospital the first night and removed him to the county hospital the next day where he spent about five days before she brought him home. Shortly thereafter Barksdale died but not before a suit had been instituted by him asking for cancellation of the deed that had been given to Mrs. Sholar on the ground that they were not taking care of him. A good portion of the evidence adduced in the case by Mrs. Ellis related to the drinking habits of the two defendants. She testified that her father did not want to come back to Charlotte County, but on cross-examination said that the letters which she wrote for him were primarily what she wanted to say as she answered the letters.
Since the chancellor, upon the motion of the defendants, dismissed the complaint at the conclusion of the plaintiff’s testimony, we are confronted with the question of whether or not the judge should have required the defendants to proceed to put evidence on at the conclusion of the plaintiff’s case.
The Supreme Court of Florida in the case of Collins v. McKelvain, 138 Fla. 463, 189 So. 656, 656, held that a deed such as the one mentioned in this case created a presumption that there was fraud in the inception of the contract and placed a burden on the defendants to go forward with the evidence of good faith.
The evidence of the plaintiff that her father was not taken care of was rather limited, but we hold that under the Florida Supreme Court’s decision in Collins v. Mc-Kelvain, supra, it was sufficient to create such a prima facie showing as to require the defendants to go forward with their evidence.
In Collins v. McKelvain, supra, the Court said:
“Where a deed is executed in consideration of an agreement by the grantee to support the grantor, and this agreement is made by the grantee for the fraudulent purpose of securing the deed and without intending to carry it out, and it has this effect, it constitutes a fraud vititating the conveyance, and equity will set it aside. Salyers v. Smith, 67 Ark. 526, 55 S.W. 936; Priest v. Murphy, 103 Ark. 464, 149 S.W. 98; see, also, Oard v. Oard, 59 Ill. 46; Jones v. Neely, 72 Ill. 449; Seymour v. Belding, 83 Ill. 222; Cooper v. Gum, 152 Ill. 471, 39 N.E. 267; Spangler v. Yarborough, 23 Okl. 806, 101 P. 1107, 138 Am.St.Rep. 856; White v. White, Tex.Civ.App., 95 S.W. 733.
“Conduct of the grantee, after accepting conveyance of property, in fail *343 ing to provide support and maintenance for the grantor, gives rise to the presumption of an abandonment of the contract (to provide support and maintenance for the grantor) and of a fraudulent intent in entering into it and taking conveyance of the property; and relief is given upon this ground rather than upon the right to rescind for failure of grantee to carry out the terms of the contract. See McClelland v. McClelland, 176 Ill. 83, 51 N.E. 559; Stebbins v. Petty, 209 Ill. 291, 70 N.E. 673, 101 Am.St.Rep. 243.”
In Cook v. Adams, Fla.1956, 89 So.2d 6, 7, Judge Terrell, in writing the opinion of the Supreme Court in a case where a deed had been executed upon condition that the grantees would provide a home and support for the grantors, said:
“Shall provide ‘a home in the residence on said described premises during her lifetime and shall support and maintain her in a comfortable manner suitable to her station in life and as her needs designate,’ contemplates more than a few wads of chewing gum and some tag ends of ‘hand-me-downs.’ When one the age of appellee, or even younger, deeds to another their valuables for a ‘home’ and support as long as they shall live, it is not satisfied by distant or silent treatment. It contemplates that which is symbolized in the old song, ‘Home Sweet Home’; it means more than a shelter from the elements; it means more than bread and butter, medicine, doctors’ and nurses’ care; it contemplates those intangible relationships, such as comfort, a right attitude, wholesome relationships ; it may contemplate forbearance, an effort to please, the exercise of patience, and good fellowship not punctured too often with the barking of pet dogs or the romping of rude youngsters.”
The appellees forcibly argue in their .brief that the trial judge had sufficient evidence before him to determine, as the trier of facts, the issue favorable to the defendants, and that such determination could be made from the plaintiff’s own case without the necessity of rebuttal testimony on the part of the defendants. Normally this would be correct as a burden of proof is generally on the plaintiffs, but in such a case as the one now before this court, under the evidence adduced, the burden was placed on the defendants to overcome the prima facie showing of the appellant.
Since this case must be remanded for a new trial, the appellant has stated a question that we deem it necessary to determine.
Plaintiff’s point II is as follows:
“Such a conveyance is void as a matter of law where the transferee has not theretofore complied with the provisions of Chapter 651, Florida Statutes, particularly section 651.04 thereof.”
The appellees restate the plaintiff’s question as follows:
“Does Chapter 651, Florida Statutes, 1959, apply to a transfer of property to a person, not in the business of providing support, wherein the consideration of said transfer was that the grantee would support the grantor; or whether it was designed to apply to those who engage in life care contracts as a business, whether or not said business is for profit.”
This statute has not received a judicial interpretation on this question as far as we have been able to determine. Chapter 651, Florida Statutes, F.S.A., has reference to life care contracts. This chapter is the attorney general’s revision of Chapter 28190, Acts of 1953. Section 2 of 28190 (F.S. § 651.01, F.S.A.) provides:
“Legislative determination It is hereby determined by the legislature that the execution of care agreements for life or for a term of years and th* *344 business of those who engage by contract to furnish such care, are matters charged with a public interest; that heretofore abuses have been practiced in relation to the execution of said agreements, acquisition of property as consideration therefor, and the conduct of such business; that such persons presently engaged in such business in this state and those who may engage in said business, * * * and * * * this chapter which regulates such persons and businesses is a valid exercise of the police power of Florida in relation thereto.”
Section 651.03 provides for the administration of this chapter by the State Treasurer and ex officio insurance commissioner who is required to promulgate all forms and regulations necessary to effectuate the purpose of the law.
Section 651.04 requires that a certificate be issued stating that no person should enter into any agreements nor engage in the furnishing of such care nor continue to engage in such business until a certificate is issued.
Section 651.05 requires various statements and reports to be filed.
Section 651.06 has reference to unearned reserves.
Section 651.09 requires that an application for original certificate of authority shall be accompanied by a deposit with the commissioner from the person making such application, of bonds or revenue certificates of the United States, etc., in the aggregate market value of $75,000.
Section 651.10 requires that the commissioner shall have the power and is required from time to time as he may deem necessary to examine the business of any persons engaged in the execution of care agreements, etc.
It is apparent from the above excerpts from Chapter 651 that it does not apply to an isolated 'contract such as the one involved in this case, but relates to those who make a business of providing care for people for a fee or other consideration.
Reversed and remanded for a new trial.
SMITH and WHITE, JJ., concur.