Dorothy E. Russell, Appellee, v. Joseph G. Russell, Appellant.

Gen. No. 44,025.

Opinion filed December 30, 1947. Released for publication January 28, 1948.

WELCH & HOFFMAN, of Chicago, for appellant; MAURICE L. DAVIS, of Chicago, of counsel.

SCHWARTZ & COOPER, of Chicago, for appellee; IRA S. KOLB, of Chicago, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

On May 13, 1946, Howard Blum, guardian *ad litem* of plaintiff, Dorothy E. Russell, filed an amended complaint seeking separate maintenance for plaintiff. After answer filed by defendant the cause came on to be heard by the chancellor on June 26, 1946, evidence was introduced by plaintiff in support of the amended complaint, and on June 28, 1946, the chancellor entered a decree which adjudged, *inter alia,* that plaintiff was entitled to a decree for separate maintenance. Defendant appeals from the decree.

Defendant contends that the court erred in denying his petition for a change of venue from JUDGE SCHWABA, which was presented to him and filed on June 25, 1946; notice of the application for the change of venue was served on plaintiff's counsel on June 24, 1946. In passing upon the instant contention we are called upon to determine if the petition was filed in apt time, and in determining this question we have deemed it necessary to consider the pleadings that had been filed by the parties and certain rulings made in reference thereto. On November 28, 1941, plaintiff filed her complaint in which she alleged that defendant had been a resident of the State of Illinois for more than one year last past; that on April 16, 1937, she was lawfully married to defendant at New Orleans, Louisiana; that

no children were born of the marriage; that since her marriage she has always conducted herself toward defendant as a dutiful and affectionate wife but that she was compelled to cease living with him on July 10, 1941; that he has been guilty of extreme and repeated cruelty toward her in that on July 10, 1941, defendant shook her by the shoulders and threw her down, injuring and bruising her, without cause; that on September 15, 1941, he twisted her arms and threw her violently into a chair, injuring and bruising her, without cause. She prayed for alimony, attorney's fees and court costs and that the marriage between her and defendant be dissolved and declared null and void by the decree of the court. On December 8, 1941, defendant filed an answer to the complaint *in which he admits that he has been a resident of Illinois for more than a year last past;* admits the marriage; denies that plaintiff has always conducted herself toward him as a dutiful and affectionate wife and that she was compelled to cease living with him on July 10, 1941, and denies that he has been guilty of extreme and repeated cruelty toward her. On January 20, 1942, defendant filed a counterclaim in which he alleges *that he has resided in the County of Cook and State of Illinois for more than one whole year next before the filing of his counterclaim;* alleges the marriage to plaintiff and that they separated on or about July 10, 1941; alleges that since the marriage he has always conducted himself toward plaintiff as a dutiful and affectionate husband; that subsequent to the marriage plaintiff has been guilty of extreme and repeated cruelty toward him without reasonable cause or provocation, "particularly on the 10th day of July, 1941, the plaintiff scratched the defendant and clawed him about the face, shoulders, and arms, leaving severe scratches; and that again on the 15th day of September, 1941, the plaintiff scratched and clawed the defendant about the shoulders, arms, neck and face, leaving severe scratches"; prays that a de-

cree of divorce be awarded him against plaintiff. On July 21, 1942, plaintiff filed an answer to the counterclaim in which she denies that defendant had always conducted himself toward her as a dutiful and affectionate husband, and denies that subsequent to the marriage she had been guilty of extreme and repeated cruelty toward him; denies that on July 10, 1941, and on September 15, 1941, she scratched and clawed defendant; denies that he is entitled to a decree of divorce. On May 10, 1946, a verified "Petition for Appointment of Guardian *ad Litem* or Next Friend" was filed by Sidney J. Block, father of plaintiff. The petition alleges that

"5. During the pendency of this action plaintiff became seriously ill and is now suffering from an incapacitating mental illness and nervous ailment which has so affected her emotions as to make it impossible for her to comprehend the issues involved in this action or to prosecute her suit or defend her interests against the counterclaim filed herein by defendant. Plaintiff, because of the nature of her illness, is presently living with her mother in New Orleans, Louisiana, where she is and for a considerable period of time last past has been under the care of medical specialists. Counsel for plaintiff have been advised that plaintiff will require special medical attention for many months hereafter and that she will not be able to defend her interests in this action for an indefinite period of time.

"6. Defendant is a person of considerable means being the beneficiary of three or more trusts created for his benefit, each of which said trusts consists of a corpus of substantial size and amount and in addition thereto defendant is possessed of considerable additional income; that plaintiff is entirely without financial means or property and, as his wife, has a vital subsisting interest in defendant's property and income, but because of her mental and nervous illness is unable properly to assert or defend her rights therein; that

during the pendency of this action defendant has refused and continues to refuse to make any contributions toward the support and maintenance of plaintiff and that plaintiff has been supported and maintained during her illness and since the filing of this action and is presently being supported and maintained by moneys advanced by petitioner, father of plaintiff, on the credit of defendant.

"7. Because of plaintiff's present inability to comprehend or understand the gravity of the issues involved in the pending action there is serious danger that unless a guardian ad litem or next friend is appointed by this court for and on her behalf that she may, through her inability to prosecute or defend this action, suffer a complete loss or sacrifice of her personal and property rights; that this court as a court of equity has the right, power and duty to appoint in this proceeding a guardian ad litem or a next friend to represent plaintiff in this suit so as to defend and protect the interests of plaintiff, both in her personal and property rights, so long as she remains incapable of defending herself or asserting her rights."

The petition prays that a guardian *ad litem* be appointed to defend and represent the interests of plaintiff in the action and that he be authorized to prosecute and defend the pending action for and on behalf of plaintiff, to file necessary pleadings and to take all steps to protect her personal and property rights. After due notice the petition was presented to the chancellor and attorneys for both parties appearing in open court the chancellor entered an order finding that plaintiff "is seriously ill and suffering from an incapacitating mental illness and nervous ailment which has so affected her emotions as to make it impossible for her to comprehend the issues involved in this action or to prosecute her suit or defend her personal and property rights in connection with the counterclaim filed herein by defendant," and ordering that Howard

Blum is appointed guardian *ad litem* for plaintiff with full power, right and authority to represent and defend the personal and property rights of plaintiff in the action. On May 13, 1946, the guardian *ad litem* filed on behalf of plaintiff a verified amended complaint which alleges that defendant "is now and has been for more than one year last past a resident of the State of Illinois"; alleges that defendant maintained marital relations with plaintiff until about September, 1941;

"3. That no children were born of said marriage.

"4. That for more than four years immediately prior to the filing of this Amended Bill of Complaint the defendant, in gross disregard of his marriage duties and obligations, without reason or excuse has pursued an antagonistic, morose, hostile and wrongful course of conduct toward plaintiff; that in or about the month of September, 1941, said defendant, without any provocation or justification quitted and abandoned the matrimonial home heretofore maintained with plaintiff, and although often requested so to do has refused to reside with plaintiff.

"5. That as a direct result of defendant's morose, hostile and wrongful course of conduct toward plaintiff, plaintiff became seriously ill commencing in or about April, 1941, and is presently suffering from an incapacitating mental illness which has so affected her emotions as to make it impossible for her to comprehend the issues involved in this action or to defend her personal and property rights involved herein; that because of the defendant's said wrongful conduct toward her, plaintiff has since in or about April 1, 1941, been under the care and attention of medical specialists and will require such specialized treatment for at least one year from the date hereof. Howard Blum, guardian ad litem as aforesaid, is informed and believes, and upon such information and belief states the fact to be that the treatment, support and care of plaintiff herein will require the expenditure of a minimum of Four

Hundred Dollars per month for the period of at least one year from the date hereof.

"6. That in or about September, 1941, defendant wilfully deserted and absented himself from plaintiff completely, without any reason, just cause or provocation and from that date hitherto has persisted in such desertion, and plaintiff, without any fault on her part has since said date lived and is presently living separate and apart from the defendant."

The amended complaint also alleges that defendant has been guilty of extreme and repeated cruelty toward plaintiff and sets up the acts of cruelty that were alleged in plaintiff's complaint; further alleges:

"8. That since in or about July, 1941, plaintiff has been supported and maintained by her father, Sidney J. Block, except as hereinafter stated, and that since said latter date and to the date hereof, plaintiff's said father has advanced, on the credit of defendant, approximately Thirty Thousand Dollars for her support, maintenance, doctor bills, railroad transportation and hotel expenses, necessarily incurred because of plaintiff's said illness, hospital bills and other necessary items of expense, all of which were essential for the support and maintenance of plaintiff, having special regard for the nervous illness which befell her and still persists because of the wrongful course of conduct by defendant toward plaintiff. That since in or about July, 1941, plaintiff and her father have made repeated demands of defendant to support, care for and maintain plaintiff, but defendant has persistently refused so to do. . . .

"9. That during said period from in or about July, 1941, to the date hereof, defendant has made no financial contributions to the support and maintenance of plaintiff except as follows:

"Defendant contributed One Hundred Eighty Dollars in 1941 to plaintiff's support, and for a period of about eight months received an allotment from the de-

fendant of Fifty Dollars per month. The foregoing represents the entire financial contributions made by defendant for plaintiff's maintenance and support from in or about July, 1941, to the date hereof.

"10. That defendant is a strong, healthy man of the age of thirty-three years and for upwards of five years has been in receipt of substantial income, the exact amount of which is unknown to plaintiff, from his personal earnings and family trusts created by his mother, Hattie Goetz Rosenberg, now deceased, under which trusts defendant is a beneficiary; that defendant is also beneficiary under a certain insurance trust created by Edward G. Russell; that defendant is also in receipt of substantial additional income, the extent of which additional income is not accurately known to plaintiff.

"11. That from the date of their marriage, namely, April 16, 1937, until the date of their separation, plaintiff and defendant resided in commodious apartments located in Chicago, Illinois, which were furnished in artistic fashion with furniture and antiques of excellent taste and quality and that defendant supported and maintained plaintiff in that condition and style from his earnings and income up to the date of his desertion and abandonment and their separation.

"12. That plaintiff has no assets, income or property, except the household furniture and antiques formerly used by the parties hereto in their apartments aforesaid, and that said furniture and antiques are and have been since the separation of the parties hereto in defendant's possession or control"; prays that defendant be compelled to make a proper and suitable provision for the separate maintenance and support of plaintiff suitable to the condition in which he maintained and supported plaintiff from the date of their marriage to the date of his desertion of plaintiff commensurate with the income and financial means of defendant, and prays for attorney's fees and suit

money. On May 20, 1946, the guardian *ad litem* filed, by leave of court, a verified petition which recites the various pleadings that had been filed in the cause, and alleges:

"3. Plaintiff is informed and believes, and upon such information and belief, states the fact to be that defendant plans to go or has already gone to the State of Nevada or to some other state to establish there a fictitious and colorable residence for the purpose of fraudulently obtaining a divorce from plaintiff, because of the fact that he is unable to obtain a divorce in the State of Illinois under any existing statute; that plaintiff has been advised and believes that the courts of the State of Nevada are disposed to grant divorces to applicants regardless of the merits of the particular case or the validity of any defense which may be interposed; that defendant is a bona fide resident and citizen of the State of Illinois and has been such a resident and citizen for many years last past, and also that by virtue of the defendant having filed his answer and counterclaim in this action, which pleadings are presently pending before this court, he has submitted to the jurisdiction of this court for all purposes with regard to his matrimonial status and all matters incident thereto.

"4. That if defendant is permitted to institute or proceed with an action for divorce in another state, such attempt will be in furtherance of his plans to evade the statutes of the State of Illinois and in fraud of the laws and public policy of this state; that such action represents a fraud upon plaintiff who, because of her present serious mental illness, is unable to defend herself in a divorce action and who because of her said illness requires, and under the law is entitled to receive, support and maintenance from defendant in order that she may secure adequate and necessary medical treatment, as well as support for food, clothing and shelter; that there is presently pending before

this court the petition of plaintiff for the allowance of temporary alimony and support.

"5. That if defendant is permitted to commence or proceed with a divorce action in another state plaintiff, through her guardian ad litem, will be compelled to go to great expense, inconvenience and effort in defending such litigation, and because of plaintiff's incapacitating illness she will be burdened with great physical hardships; that for several years last past defendant has refused and still refuses to contribute any financial support or maintenance for or on behalf of plaintiff, and plaintiff being without any financial means or income of her own will be unable to defend any action which may be brought or prosecuted by defendant in another state; and that if said defendant is permitted to carry through his plans and intentions irreparable harm and injury will be done to plaintiff."

The petition prays "that an order be entered enjoining and restraining defendant from in any way, manner or form, instituting or filing any complaint, petition or proceeding or from continuing with the prosecution of any complaint, petition or proceeding for a divorce or other domestic or matrimonial relief against plaintiff in any court of the State of Nevada or of any other state or country other than the State of Illinois until the disposition of plaintiff's action for separate maintenance and defendant's counterclaim for divorce, or until the further order of this court."

On May 29, 1946, defendant filed a verified answer to the petition for a restraining order, in which he denies that plaintiff is living with her mother in New Orleans because of the nature of her illness and alleges that she removed herself to New Orleans of her own free will prior to the institution of these proceedings and has continued to reside in said place since that time because of her personal preference; alleges that he has no knowledge as to whether plaintiff is under the care of medical specialists; denies that she requires

in addition to her normal support $400 per month and denies that such sum would be in keeping with his ability to furnish plaintiff with maintenance and support; *"admits that trial of this cause as well as the petition for temporary alimony and solicitor's fees has been set for hearing on June 7th, 1946.*

"3. Defendant denies that he has gone, or at any time planned to go, to any state other than the State of Illinois for the purpose of establishing a fictitious or colorable residence for the purpose of fraudulently obtaining a divorce from plaintiff and denies that he is unable to obtain a divorce in the State of Illinois under any existing statute, and defendant has no knowledge as to the belief of plaintiff with respect to the propriety of the actions of courts in the State of Nevada with respect to actions for divorce. Defendant denies that he is a bona fide resident and citizen of the State of Illinois, and further answering says *that he has since the 11th day of April, 1946 been an actual and bona fide resident and citizen of the State of Nevada. Defendant admits that he has filed an answer and counterclaim herein; that he has submitted himself to the jurisdiction of this court, but denies that such submission in any way operates to preclude him from making an actual and bona fide change in his place of residence.* Further answering, defendant states *that his establishment of a residence in the State of Nevada is actual and bona fide and that the same has not been done for any fraudulent or improper purpose.*

"4. Defendant denies that the institution by him of an action for divorce in any state other than Illinois would be in the furtherance of any plan to evade the laws of the State of Illinois or to perpetrate a fraud against the laws or public policy of the State of Illinois. Defendant further denies that any such action upon his part would constitute a fraud upon the plaintiff, either because of her mental condition or otherwise and denies that plaintiff would be any less able to de-

fend an action in the State of Nevada than she would be in the State of Illinois, the plaintiff being a resident not of Illinois, but of the State of Louisiana; and defendant further denies that plaintiff requires, or that under the law she is entitled to receive support and maintenance or temporary alimony from defendant. Further answering, defendant states *that he did in fact, on May 24, 1946* [which was four days after the filing of the petition for a restraining order], *file an action for divorce against the plaintiff herein, in The Second Judicial District Court of the State of Nevada . . .; and that said action has been instituted in good faith under the laws of the State of Nevada, of which defendant is a resident and citizen.*

"5. Defendant denies that the commencement by him of a divorce action in a state other than Illinois will occasion plaintiff great expense, inconvenience and effort, and denies that the commencement by defendant of such action would burden plaintiff with great physical hardships. Defendant denies that he has for several years last past refused to contribute financially to the support of the plaintiff, denies that plaintiff is entitled to support or maintenance from defendant, and denies that plaintiff is without financial means or income to defend the action for divorce which has been instituted against her by defendant in the State of Nevada; and defendant further denies that the institution by him of a suit for divorce in a state other than Illinois would cause irreparable harm and injury to plaintiff.

*"And further answering the petition of plaintiff herein for a restraining order, defendant states that the circumstances of the parties hereto, as they are disclosed by the record in this cause, are not such as to warrant or justify the entry by this Honorable Court of an injunction or restraining order against the defendant to prohibit his commencing or prosecuting an action in any state other than Illinois under which he*

*is legally entitled to proceed, plaintiff being a resident not of the State of Illinois but of the State of Louisiana.''* (Italics ours.)

On *May 29, 1946,* the chancellor entered the following order:

"This matter coming on to be heard on the petition . . . filed herein . . . for the entry of an order restraining and enjoining, until the further order of this court, Joseph G. Russell, defendant herein, from instituting or continuing with the prosecution of any complaint for divorce or other domestic or matrimonial relief against plaintiff in any court of the State of Nevada or of any other state or country other than the State of Illinois; and upon defendant's answer thereto, and it appearing to the court that there is presently pending before this court plaintiff's amended complaint for separate maintenance and support and defendant's counterclaim for divorce; and it further appearing to the court that *counsel for defendant appeared in open court and admitted to the court that defendant, Joseph G. Russell, since the filing of said petition for restraining order, that is, on May 24, 1946, commenced an action for divorce in The Second Judicial District of the State of Nevada . . . against the plaintiff herein,* and after examining plaintiff's said petition and defendant's answer thereto, and after hearing the statements of counsel for plaintiff and said guardian ad litem and the statements of counsel for defendant, and being fully advised in the premises, Finds as follows:

"(a) This court has jurisdiction of the parties and the subject matter herein.

"(b) That defendant has gone to the State of Nevada and has there established a fictitious and colorable residence for the purpose of fraudulently obtaining a divorce from plaintiff, and that such action by defendant constitutes a fraud upon plaintiff and is in furtherance of defendant's plans to evade the stat-

utes of the State of Illinois and is in fraud of the laws and public policy of this state.

"(c) That plaintiff, Dorothy E. Russell, is seriously ill and is suffering from an incapacitating mental illness and nervous ailment and is without personal income, property or means with which to support or maintain herself, and that she will be burdened with great physical and financial hardships if she is compelled to defend a divorce action against her in the State of Nevada.

"(d) That defendant, Joseph G. Russell, is a bona fide resident and citizen of the State of Illinois and has been such a resident and citizen for many years last past.

"(e) That this court has jurisdiction over the defendant by virtue of his appearance and counterclaim filed in this cause and by virtue of notice of said petition for restraining order having been served upon Welch and Hoffman of Chicago, Illinois, his attorneys in this cause, due notice of said petition having been given in writing to said attorneys for defendant who were present in open court representing said defendant upon the hearings had in connection with said petition for restraining order.

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Joseph G. Russell, defendant herein, be and he hereby is restrained and enjoined from in any way, manner or form continuing with the prosecution of any complaint, petition or proceeding for a divorce or other domestic or matrimonial relief against plaintiff in any court of the State of Nevada or of any other state or country other than the State of Illinois, and particularly from proceeding further with that certain action for divorce commenced by him against the plaintiff herein on May 24, 1946, entitled 'Joseph G. Russell vs. Dorothy Block Russell', in The Second Judicial District Court of the State of Nevada . . . until the disposition by this court of plaintiff's action for

separate maintenance and support and defendant's counterclaim for divorce, which matters are presently pending before this court, or until the further order of this court.

"*It is further ordered and decreed that defendant's* [oral] *motion to withdraw his counterclaim filed herein be and it is hereby. denied.*" (Italics ours.)

Defendant caused the common law record to show that he objected to the entry of the order and thereafter filed an interlocutory appeal to this court from the said order (*Russell v. Russell*, 329 Ill. App. 580) in which he contended that the chancellor erred in entering the restraining order and also erred in denying defendant's motion to withdraw his counterclaim. We held that defendant's contention as to the entry of the restraining order "is utterly without merit" (p. 587), and further held that the chancellor properly overruled "defendant's belated oral motion to withdraw his counterclaim, made during the hearing on petition and answer for restraining order. . . ." (p. 588) The opinion upon that appeal was written by MR. JUSTICE FRIEND and it throws considerable light upon the merits of the instant appeal. In the defendant's brief filed upon that appeal he states: "Can it be said that the chancellor in our case approached the proceedings in Nevada in full satisfaction of the duty imposed by the rule laid down by the Illinois Supreme Court?" The brief also questioned the fairness of the chancellor in disposing of defendant's motion to withdraw his counterclaim. On June 11, 1946, the chancellor entered an order, *by agreement of counsel,* setting the cause for trial on the merits of the cause on June 26, 1946. On June 25, 1946, defendant filed his petition for a change of venue from JUDGE SCHWABA in which he alleged that knowledge of the prejudice of JUDGE SCHWABA first came to petitioner on June 22, 1946. The following is the order entered by the chancellor in passing upon defendant's petition for a change of venue:

"This matter coming on to be heard upon the petition of defendant filed herein on June 25, 1946 for a change of venue on notice served upon counsel for plaintiff on June 24, 1946, and the court having examined said petition and having heard the argument of counsel for plaintiff and for defendant, and having considered the statute and authorities cited by counsel, as well as the record in this cause, and being fully advised in the premises, FINDS AS FOLLOWS:

"(a) That this cause has been pending on the trial calendar of the undersigned judge of said court for upwards of four months prior to the date hereof and that counsel for defendant, who are the same counsel appearing for defendant in connection with said petition for change of venue, have made several appearances before the undersigned judge of said court and have argued several matters on behalf of the defendant in this cause during all of which time said counsel for defendant have never suggested or intimated that said judge was prejudiced or that defendant would not obtain a fair trial.

"(b) That on June 11, 1946, counsel for defendant agreed in open court with counsel for plaintiff that this cause should be tried on the merits on June 26, 1946, and upon said agreement the undersigned judge set aside sufficient time on his trial calendar for June 26, 1946, in order that the trial of said cause might then proceed on the merits.

"(c) The said petition for change of venue was filed on June 25, 1946, one day before the date specially set aside for the trial of said cause on the merits.

"(d) The undersigned judge suggested in open court to counsel for plaintiff and for defendant that they ascertain whether or not another chancellor was available to hear this cause on the merits so that there would be no unreasonable delay in the hearing thereof; that counsel for plaintiff and defendant conferred with the head of the chancery division of the Superior Court of Cook County and with other chancellors of

said court and reported to the undersigned judge of said court that no other chancellors were available to hear this cause.

"(e)  That plaintiff, in reliance upon the agreement of counsel, made in open court on June 11, 1946, fixing the date of the trial of the merits in this cause for June 26, 1946, arranged to have her chief witness come to Chicago from New. Orleans, Louisiana, for the purposes of attending the trial of this cause on June 26, 1946, and that plaintiff, through her counsel, produced said witness this day in open court, said witness having arrived in Chicago today for the sole purpose of attending said trial on June 26, 1946.

"(f)  That said petition for change of venue having been filed one day before the commencement of the trial of this cause upon the merits *was not filed in apt time and was not filed at the earliest practicable moment.*

"(g)  That defendant in his answer filed herein on May 31, 1946, to plaintiff's petition for restraining order admits that defendant instituted an action for divorce on May 24, 1946, in the Second Judicial District Court of the State of Nevada . . . entitled, Joseph G. Russell vs. Dorothy Block Russell, and that summons therein was mailed to said Dorothy Block Russell, the plaintiff in the instant action, on May 24, 1946, with the return day set for thirty days subsequent to May 24, 1946, which summons was exhibited in open court by counsel for plaintiff filed herein. That the purpose of filing the petition for change of venue on June 25, 1946, was to unduly delay the instant action pending in Illinois beyond the date when defendant intended to proceed with the trial of said action instituted by him in Reno, Nevada.

"(h)  That said petition for change of venue is without merit in law or equity and is interposed for the purpose of delay and that the granting of the prayer thereof would unduly delay the trial of this cause on the merits.

"Now, THEREFORE, IT IS ORDERED, that the prayer of said petition for change of venue be and it hereby is denied and that this cause shall proceed to trial on the merits as previously agreed by plaintiff and defendant on June 26, 1946.

"This Order is entered *nunc pro tunc* as of June 25, 1946." (Italics ours.)

Plaintiff contends that as defendant, in his brief, has asked this court to consider this case upon the merits he has waived any error that may have been committed by the denial of the application for a change of venue, citing *Kerner v. Peterson,* 368 Ill. 59, 81, and *City Nat. Bank & Trust Co. v. Sewell,* 300 Ill. App. 582, 589, in support of the contention. Defendant cites *Talbot v. Stanton,* 327 Ill. App. 491, 495, 496, in opposition to plaintiff's contention. We deem it unnecessary to pass upon plaintiff's contention. The petition for a change of venue appears to be in proper form and duly verified as required by the statute, and the controlling question, in our judgment, is whether it was filed in apt time and at the earliest practicable moment under the circumstances shown by the record. The chancellor in ruling upon the application for the change of venue found, *inter alia,* that it was not filed in apt time and at the earliest practicable moment. In the recent case of *Comrs. of Drainage Dist. v. Goembel,* 383 Ill. 323, the court states (p. 328):

"A petition for a change of venue must be made at the earliest practicable moment. (*Ossey v. Retail Clerks' Union,* 326 Ill. 405; *McClelland v. McClelland,* 176 Ill. 83; *Haley v. City of Alton,* 152 Ill. 113.) An application made after the hearing started comes too late. (*Ossey v. Retail Clerks' Union,* 326 Ill. 405; *Richards v. Greene,* 78 Ill. 525; *Hudson v. Hanson,* 75 Ill. 198.) The reason that supports the rule is obvious. It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions

was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed.''

The order entered by JUDGE SCHWABA on May 10, 1946, appointing a guardian *ad litem* for plaintiff upon the petition filed by her father was an adverse ruling as to defendant. The order entered by JUDGE SCHWABA on May 13, 1946, allowing the guardian *ad litem* to file plaintiff's amended complaint for separate maintenance and support, instead of a divorce, was also an adverse ruling as to defendant. When the guardian *ad litem* was allowed by JUDGE SCHWABA, *on May 20, 1946,* to file plaintiff's petition for a restraining order against defendant the latter in his answer boldly stated that he had become an actual *bona fide* resident and citizen of Nevada on April 11, 1946; that on *May 24, 1946,* he had filed an action for divorce against plaintiff in that State and that said action was instituted in good faith under the laws of Nevada, of which he is a resident and citizen, and he challenged the power of JUDGE SCHWABA to enter a restraining order prohibiting him from commencing or prosecuting an action for divorce in any State other than Illinois. The order entered by JUDGE SCHWABA on May 29, 1946, not only restrained defendant from proceeding further with the action of divorce that was commenced by him against plaintiff on May 24, 1946, in the Second Judicial District of the State of Nevada *but it also denied an oral motion by defendant that he be allowed to withdraw his counterclaim filed in the instant proceedings.* As to that motion we stated in *Russell v. Russell, supra* (p. 588):

''Defendant's belated oral motion to withdraw his counterclaim, made during the hearing on petition and answer for restraining order, on May 29, 1946, after the chancellor had indicated in open court that he had been deceived by defendant's conduct and that a restraining order should issue, was properly overruled.''

June 25, 1946, the date defendant filed his petition for a change of venue, was about a week before the date set for the commencement of the summer vacation of the court, and it is plain, therefore, why counsel for both parties, after conferring with the head of the chancery division of the Superior court and other chancellors of the court, reported to JUDGE SCHWABA that they were unable to find any other chancellor available to hear the cause. While the motion for the restraining order was a direct attack upon defendant's admitted plan of procedure to abandon his counterclaim in the Superior court of Cook county and to prosecute his divorce action in Nevada, counsel for defendant was willing to try out the attitude of the chancellor upon the important questions involved in the said motion. To repeat what was stated in *Comrs. of Drainage Dist. v. Goembel, supra* (p. 328): "It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed." Under the circumstances presented by the instant record it is our judgment that the hearing upon the motion for a restraining order and the oral motion of defendant for leave to withdraw his counterclaim was a material and important part of the case, and since that part had received the consideration of the chancellor and he had made a ruling thereon it was then too late to file a petition for a change of venue (see *Comrs. of Drainage Dist. v. Goembel, supra*, p. 329), *which was not filed until twenty-seven days after the entry of the restraining order,* and fourteen days after counsel for plaintiff and defendant had appeared before JUDGE SCHWABA in open court and agreed that an order be entered setting the cause for trial upon the merits on **June 26, 1946.**

We are aware that in the instant case the merits of the petition and the motives of defendant in filing it may not be inquired into by the chancellor, and if in our consideration of the instant question we have referred to and commented upon parts of the record that seem to have a bearing upon his purpose and good faith in filing the petition *it must be understood that we have considered these parts solely as they bear upon the question as to whether or not the petition was filed in apt time.* We hold that the chancellor, under the record, was warranted in denying the petition for a change of venue.

Defendant contends that ''the proofs do not establish plaintiff's allegations of desertion by the defendant, or misconduct on the part of the defendant which would give plaintiff good cause for living separate and apart from defendant, or that the living apart was without fault on the part of plaintiff. Failure in such proofs defeats plaintiff's right to separate maintenance.'' *As defendant offered no evidence at the hearing of this cause* his counsel is compelled to contend here that ''the record is utterly bare of the proof requisite to make out plaintiff's case, upon her amended complaint for separate maintenance.'' In his argument in support of the contention defendant ignores material and important facts in evidence. While counsel for plaintiff was seriously handicapped in the trial by the fact that it was impossible for him to call plaintiff as a witness because of her physical and mental infirmities, nevertheless, a clear case was made out. Sidney J. Block, father of plaintiff, testified that he lived in New Orleans, Louisiana; that his daughter was then in a nervous condition, sick and confined to his home and unable to make the trip to Chicago; that plaintiff and defendant were married in New Orleans on April 16, 1937; that defendant is thirty-three years of age; that after the marriage defendant located in Chicago and had a furnished apart-

ment in the Cornell Towers, that later they had a furnished apartment at the Piccadilly, and still later an unfurnished apartment, which they furnished, "on 63rd Street"; that he visited them in Chicago three or four times a year and had occasion to observe her conduct and his conduct; that his daughter always conducted herself toward defendant while she lived with him as husband and wife as a dutiful wife; that she attended to her household duties in every respect as any other dutiful wife would do; that "the early part of their married life seemed very happy"; that "everything was in perfect harmony," but that when he came to visit them in December, 1940, he noticed that there was a change in the household, that defendant "left her at home by herself at night, and didn't want company in the home"; that "he didn't pay much attention to her"; that he never took his wife out socially; that in December, 1940, his daughter asked defendant to take her out socially but that he never did so during the visit of the witness; that defendant "was cold, or chilly," and would tell his wife that he was going out, and would go out by himself; that the witness visited them again in the early part of 1941 and found his daughter in a "high strung condition"; that defendant stated that he did not want any company in the home; that in the summer of 1941, while the witness was visiting Nashville, Tennessee, he was advised that his daughter was sick and that he should come to Chicago; that when he arrived at their home he found plaintiff highly nervous and pleading with her husband for proper care and attention; that she told her husband that she was sick and wanted proper attention in the form of medical care; that defendant stated that he thought it would be a good idea for the witness to take plaintiff south; that the witness had a home at Pass Christian, Mississippi, and defendant stated that he thought it would be a good idea for the witness to take his daughter to that place; that "he

thought that she could recuperate there and finally
get around to a normal condition of health,'' that de-
fendant stated that he ''thought she was sick, very
nervous condition''; that the witness secured defend-
ant's permission to take his daughter south and asked
defendant to go south with them, but defendant stated
that he would come down in three or four months;
that he drove his daughter to Pass Christian about
the end of July, 1941; that defendant did not come
there, and three months thereafter the witness wrote
defendant and asked him to come down; that defend-
ant then came to Pass Christian and lived in the home
of the witness; that they discussed his daughter's con-
dition and about her going back to Chicago, and de-
fendant told the witness that *"he didn't want to take
her back because he didn't want to have the care of a
sick girl"*; that defendant stayed in Pass Christian for
two weeks and then left for Chicago; that thereafter
the witness took his daughter to Chicago with the
thought of getting them together again, and de-
fendant advised the witness ''that it would be neces-
sary for me to take a room at the hotel, which I did,
at the LaSalle, *as he didn't want his wife back in their
apartment on 53rd Street"*; that the witness called
defendant up and asked him if his wife could come to
the apartment and defendant refused to let her into
the apartment, and the witness and his daughter stayed
at the LaSalle hotel; that right after that visit the
witness made another trip to Chicago and stopped at
the LaSalle hotel; that he spoke to defendant in regard
to plaintiff's staying in the apartment which she and
her husband had occupied on the south side and he told
defendant that he thought that plaintiff was entitled
to stay in the apartment instead of at the hotel; *that
defendant absolutely "refused her admission to the
apartment"*; that in 1943 the witness saw defendant at
Camp Skokie and tried to get defendant and plaintiff
together again; *that he asked defendant for a contribu-*

*tion for plaintiff's maintenance, which defendant refused to give;* that from 1941 to the time of the trial defendant contributed approximately five hundred dollars to the maintenance and support of plaintiff, and this amount was paid during the period defendant was in the army service; that the witness has supported and maintained his daughter since the summer of 1941 and has paid $30,000 for her clothing, medical care, food, transportation and hotels; that he sent her to various parts of the country until she could gain admittance to a sanitarium; that from time to time he informed defendant that he, the witness, was supporting and maintaining plaintiff, and he would ask defendant for contributions but that he always refused to make contributions; that when plaintiff was being treated by Dr. Sherman she wanted to see her husband but defendant refused to go and see her at Kenilworth (sanitarium), where she was; that in the summer of 1941, while plaintiff was in the south, she instituted a bill for divorce in Mississippi; "Q. And what happened to that suit? A. Mr. Russell didn't go through with the suit in any way in the State of Mississippi. He immediately came north. . . . he handled it all himself"; that *defendant stated to the witness that he did not want to have anything to do with plaintiff; that defendant arranged for the filing of the divorce suit in Mississippi and plaintiff had no counsel in that suit.* Howard Blum, guardian *ad litem,* testified that he saw defendant in April, 1946; *that defendant told him that "he wanted his freedom, didn't want to go back to Dorothy, and wanted a divorce. He was very final about it";* that in June or July, 1944, while Dr. Sherman was treating plaintiff, who was in a very high strung, crying condition, the witness and Mr. Block took plaintiff to a small hospital on the south side and a few days after that she was taken to Kenilworth Sanitarium; that the doctor informed the witness that plaintiff was calling for her husband and that he

thought it would help plaintiff considerably if the witness could get defendant to visit her; that the witness then *went out to Camp Grant and saw defendant and he absolutely refused to go out and visit plaintiff*. In defendant's answer to plaintiff's amended complaint he admitted that since July, 1941, he had made no financial contribution to the support and maintenance of plaintiff save that he contributed $180 in 1941 to plaintiff's support and for a period of about eight months he gave, *by way of allotment*, $50 per month. We take notice that the payments for the eight months' period were made while defendant was in the army service and that these payments cannot be considered as voluntarily made. The chancellor had before him the uncontradicted evidence that the divorce suit filed in Mississippi by plaintiff was in fact instituted by defendant, and that plaintiff, who was ill mentally and physically at the time, had no counsel. The chancellor also had before him the fact that defendant filed a counterclaim for divorce in the Superior court proceeding and afterward tried to abandon the counterclaim, and the chancellor had a right to assume, in view of the circumstances in evidence, that defendant's attempt to abandon the counterclaim was due to the fact that the counterclaim might act as a hindrance to defendant's scheme to obtain a divorce against plaintiff in the Nevada court. The mental and physical condition of the unfortunate plaintiff was such that a decent, humane husband would have treated her with devotion and forbearance, but the facts and circumstances in evidence show that defendant was cold-blooded and inhuman in his treatment of plaintiff, and sought to get rid of her for the sole reason that she had become ill mentally and physically. Defendant saw fit to offer no evidence in defense of his conduct. The evidence conclusively shows that plaintiff is living separate and apart from defendant without her fault. The cases cited by defendant in support of his conten-

tion that plaintiff failed to make out a *prima facie* case entitling her to a separate maintenance decree differ from the instant case upon the facts. We hold that the instant contention is without the slightest merit, and we feel impelled to say that it is difficult to believe that it is seriously made. It seems clear that the effort of defendant to have the instant decree reversed is motivated by the fact that it acts as a barrier to the fraudulent divorce proceedings in the Nevada court.

 It is also difficult to believe that defendant's further contention that plaintiff has resided in New Orleans, Louisiana, since prior to the filing of the amended complaint for separate maintenance and therefore she has no right to maintain her suit for separate maintenance, is seriously made. The uncontradicted evidence shows that plaintiff went to the home of her parents in New Orleans because defendant suggested to her father that because of her illness he thought it would be a good idea for the father to take plaintiff south to his summer home at Pass Christian, Mississippi, where "she could recuperate and finally get around to a normal condition of health," and the father, after obtaining the permission of defendant, took his daughter south and cared for her; that defendant afterward refused to take plaintiff back to Chicago because he did not want to take care of a sick girl, and that upon two occasions he refused to permit plaintiff to enter the family apartment and stated that he did not want to return to plaintiff, that he wanted a divorce; that he refused to see her when she was a patient in a sanitarium. The father of plaintiff testified that his daughter did not vote in New Orleans, that her domicile was in Chicago, and that she was a resident of Chicago. The Separate Maintenance Act (ch. 68, par. 23, sec. 2, Ill. Rev. Stat. 1945 [Jones Ill. Stats. Ann. 109.190]) provides that proceedings under the Act shall be instituted in the county where the husband resides. There is, of course, no merit in

defendant's next contention that there is no proof as to where defendant has resided, *either at or immediately prior to the filing of the amended complaint for separate maintenance,* and therefore plaintiff's suit for separate maintenance cannot be maintained. It is sufficient to say in answer to this contention that upon the defendant's interlocutory appeal from the restraining order (*Russell v. Russell, supra*) the question was raised by defendant that there was no finding that either the plaintiff or the defendant resided in the County of Cook, Illinois, and we stated that in determining the question of jurisdiction we would examine the entire record before us, and after a review of the record we held that the defendant's contention was utterly without merit.

The decree of the Superior court of Cook county appealed from is affirmed.

*Decree affirmed.*

FRIEND, P. J., and SULLIVAN, J., concur.