Roselawn Memorial Park, Plaintiff-Appellant, v. Kenneth L. DeWall, Kermit B. DeWall, and Lucille DeWall, Individually and as Partners Doing Business as T. C. DeWall and Sons, Defendants-Appellees.

Kenneth L. DeWall, Kermit B. DeWall, and Lucille DeWall, Individually and as Partners Doing Business as T. C. DeWall and Sons, Counter-plaintiffs-Appellees, v. Roselawn Memorial Park, Counterdefendant-Appellant.

**Gen. No. 10,024.**

Third District.

August 21, 1956.

Rehearing denied August 21, 1956.

Released for publication September 6, 1956.

R. G. Heckenkamp, and A. M. Fitzgerald, both of Springfield, for plaintiff-counterdefendant-appellant.

Barber & Barber, of Springfield, for defendants, counterplaintiffs-appellees; Alton G. Hall, Roger H. Little, and Henry R. Barber, all of Springfield, of counsel.

As Modified on Denial of Rehearing.

PER CURIAM.

The plaintiff, Roselawn Memorial Park, brings this cause to this court to review a decree of the Circuit Court of Sangamon county wherein on a counterclaim the defendants obtained a permanent injunction finding that a certain rule of the cemetery was unreasonable, null and void, and enjoined the plaintiff-appellant from denying access to the cemetery by the defendants for the purpose of delivering, setting, sealing and lowering burial vaults.

The plaintiff is a private corporation operating a cemetery near Springfield, Illinois and licensed under the "Cemetery Care Act," Ill. Rev. Stat. 1955, Chap. 21, par. 64.1, et seq. On May 15, 1952 it filed its verified complaint for injunctive relief in the Circuit Court of Sangamon county against the defendants, Kenneth L. DeWall, Kermit B. DeWall and Lucille DeWall, individually and as partners doing business as T. C. DeWall and Sons, engaged in the business of selling Wilbert Burial Vaults in the Springfield area. It alleged that one of its rules regarding interments provides: "All graves shall be dug by workmen employed in the Park and no work of any kind shall be done in the Park except by Park employees." The defendants

67

had been reminded of this rule before May 1, 1952 and notified that after that date all burial vaults in the cemetery would have to be installed by cemetery workmen; that defendants, nevertheless, installed a vault on May 3, 1952 and indicated that they intended to install another on the date that the complaint was filed. The court issued a temporary injunction without notice and approved plaintiff's bond on May 15th. On June 6th defendants moved to dissolve the temporary injunction and filed their answer in which they set up that they were lot owners in the cemetery operated by plaintiff, as well as in the business of selling burial vaults. In addition defendants filed a counterclaim praying for a declaratory judgment as to their right to install vaults in the cemetery and to restrain the cemetery from interfering with the installation of vaults by the defendants. On June 16, 1952 the temporary injunction granted plaintiff was dissolved because no notice had been given to the defendants. On July 19th, July 21st and July 26th temporary restraining orders were issued by the court at counterplaintiffs' request permitting the installation of vaults purchased for specific interments by the counterplaintiffs. A hearing was had August 6, 1952 on the counterplaintiffs' motion for blanket temporary injunction filed on July 19, 1952 and an order was entered granting the motion and such injunction issued on September 7, 1952. On the latter date, by agreement of counsel, the cause was tentatively set for hearing before the court on September 22, 1952.

All of these proceedings were had before the Honorable DeWitt S. Crow, except the order of May 15, 1952 providing for the issuance of a temporary injunction as prayed for in the original complaint. On September 18, 1952 a petition for change of venue by the plaintiff was filed on the ground of the prejudice of the Honorable DeWitt S. Crow. The petition and affidavit in support thereof alleged that the prejudice first came to the

68

knowledge of the petitioner on or about September 2, 1952. Notice and proof of service of the petition for change of venue on the defendants and counterplaintiffs was dated September 10, 1952 and the notice stated that the petition would be presented on September 20, 1952. The petition for change of venue from the Honorable DeWitt S. Crow was denied and the appellant assigns error on this ruling.

It is to us apparent that after numerous preliminary hearings on the issues presented by the complaint and answer, counterclaim and affidavits, as to the right of the plaintiff and of the defendants and counterplaintiffs to injunctive relief, plaintiff applied for a change of venue from the presiding judge immediately before the case was set for hearing.

In Commissioners of Drain. Dist. No. 1 v. Goembel, 383 Ill. 323, 50 N.E.2d 444, a drainage assessment case, objections to the petition were overruled in December, and in January the cause was set for final hearing on February 10th. On February 2nd defendants filed a petition for change of venue alleging prejudice of the presiding judge. The application was denied, and in affirming this order, the Supreme Court says at page 328: "A petition for a change of venue must be made at the earliest practicable moment. (Ossey v. Retail Clerks' Union, 326 Ill. 405; McClelland v. McClelland, 176 Ill. 83; Haley v. City of Alton, 152 Ill. 113.) An application made after the hearing started comes too late. (Ossey v. Retail Clerks' Union, 326 Ill. 405; Richards v. Greene, 78 Ill. 525; Hudson v. Hanson, 75 Ill. 198.) The reason that supports the rule is obvious. It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed."

In Russell v. Russell, 333 Ill. App. 68, 77 N.E.2d 328, the court says at page 87: "To repeat what was stated in Comrs. of Drainage Dist. v. Goembel, supra, (p. 328): 'It would be highly improper to permit an attorney representing parties to a suit to try out the attitude of the trial judge on a hearing as to part of the questions presented and, if his judgment on such questions was not in harmony with counsel's view, to then permit counsel to assert that the court was prejudiced and that a change of venue must be allowed.' Under the circumstances presented by the instant record it is our judgment that the hearing upon the motion for a restraining order and the oral motion of defendant for leave to withdraw his counterclaim was a material and important part of the case, and since that part had received the consideration of the chancellor and he had made a ruling thereon it was then too late to file a petition for a change of venue (see Comrs. of Drainage Dist. v. Goembel, supra, p. 329), *which was not filed until twenty-seven days after the entry of the restraining order,* and fourteen days after counsel for plantiff and defendant had appeared before Judge Schwaba in open court and agreed that an order be entered setting the cause for trial upon the merits on June 26, 1946. We are aware that in the instant case the merits of the petition and the motives of defendant in filing it may not be inquired into by the chancellor, and if in our consideration of the instant question we have referred to and commented upon parts of the record that seem to have a bearing upon his purpose and good faith in filing the petition *it must be understood that we have considered these parts solely as they bear upon the question as to whether or not the petition was filed in apt time.* We hold that the chancellor, under the record, was warranted in denying the petition for a change of venue."

█ In this case there were numerous hearings and all involved substantially the same issue to be consid-

ered on the final hearing, that is to say, the right of the parties to injunctive relief. The plaintiff here tried out the attitude of the presiding judge and we believe it was too late for the plaintiff to claim that it was prejudiced. The trial court committed no error in denying the petition for change of venue.

On October 27, 1952 the cause was referred to a master in chancery who reported to the court and recommended that plaintiff's complaint be dismissed and that a permanent injunction be issued in accordance with the prayer of defendant's counterclaim. The master in chancery made the following, among other, findings:

"6. The plaintiff has a device known as the 'Ledyard Lowering Device,' by use of which it is not possible to have a complete view as to whether or not the vault is sealed because it is placed below the surface of the ground. . . .

"8. That by use of the Wilbertway Device, the lower portion of the vault is held suspended and the vault is placed together above the ground so that a visual inspection can be made to determine whether it is sealed.

"10. That the Ledyard Lowering Device is not the most suitable to lower and seal a Wilbert Burial Vault. . . .

"18. That the rules and regulations of Roselawn Memorial Park requiring all work to be done within the cemetery by cemetery employees is unreasonable, null and void as applied to the factual situation herein."

Objections to the report were filed by the plaintiff, which were overruled. By agreement of parties these objections were allowed to stand as exceptions to the report before the court. The court on exceptions to the

71

master's report approved the report and made special findings of fact, including the following:

"8. That the Wilbertway Device is placed over and around the grave and the box portion of the vault suspended with the top above ground; at the conclusion of services, the top is placed above the box with the Wilbertway Device and the box raised up against the top, thereby sealing it and where it is visually examined for perfection of fit and freedom of foreign matter; visual inspection above the ground is essential to insure that the vault is air and water tight. . . .

"11. That shortly before May 1, 1952, the plaintiff acquired a device known as the Ledyard Lowering Device, which consists of a metal frame on four pneumatic tires and is operated by lowering the box into the grave and then lowering the lid after the services onto the box; joining of the box and lid takes place beneath the surface, where it is not possible to visually examine the seal for perfection of fit; that the Ledyard Lowering Device is not designed to handle box type vaults, such as the Wilbert. . . .

"21. That the plaintiff's interpretation and attempted application of the said rule prohibiting the defendant from delivering and setting vaults is unreasonable, null and void. . . ."

The Circuit Court overruled all plaintiff's exceptions and entered a decree finding that the rule of the Roselawn Memorial Park as herein set forth was unreasonable and void and entered a decree restraining the plaintiff from denying the defendants access to the cemetery and from setting, sealing and lowering burial vaults in plaintiff's cemetery, the rights to be exercised by the defendants and counterclaimants with due care to avoid injury or damage to the cemetery and subject

to the general reasonable rules and regulations of the plaintiff not in conflict with the decree. In so doing, the trial court in a written opinion relied upon People ex rel. Paxton v. Bloomington Cemetery Ass'n, 353 Ill. 534, 187 N. E. 455, and Rosehill Cemetery Co. v. Lueder, 406 Ill. 458, 94 N.E.2d 342.

██ Plaintiff, as the owner and operator of a cemetery, has the right to prescribe rules and regulations governing burials. (People ex rel. Paxton v. Bloomington Cemetery Ass'n, 353 Ill. 534, 187 N. E. 455.) Such rules, however, must be reasonable and are subject to judicial scrutiny. (Graves v. City of Bloomington, 67 Ill. App. 493; People ex rel. Paxton v. Bloomington Cemetery Ass'n, supra). The rule here involved is to say the least broad and comprehensive.

The actual issue in this case is a narrow one. It is contended that the rule is unreasonable and void as applied to the installation, the raising and sealing of the vault. The counterplaintiffs have a device known as the "Wilbertway" which is placed over and around the grave and the box portion of the vault suspended with the top above ground. At the conclusion of the services the top is placed above the box with the device and the box is raised up against the top, thereby sealing it and where it can be visually examined for perfection of fit, freedom of foreign matter and proper seal. The plaintiff does not have a "Wilbertway" device, but one known as the "Ledyard" lowering device, which consists of a metal frame on four pneumatic tires and is operated by lowering the box into the grave and lowering the lid after the services onto the box, the joining of the box and the lid taking place beneath the surface where it is not possible to visually examine the seal for perfection of fit. The Ledyard lowering device is not designed to handle box type vaults such as the Wilbert.

73

Regardless of the holdings of courts of other states, we believe that the courts of Illinois have settled the legal question as to the validity of the rule in question.

In Ritchey v. City of Canton, 46 Ill. App. 185, while other questions were involved, this court made the following comment with respect to an ordinance providing that no grave shall be made in the cemetery except by permission and under direction of the City Sexton:

"The city may by ordinance establish such regulations concerning the manner of digging the grave, its depth, etc., and the interment, as are reasonable in their character and necessary for the protection of the public health and welfare, and she or those who make the grave for her must conform to such regulations. Her right, however, to make a grave in her own lot and inter therein the body of her deceased daughter can not, by ordinance, be made dependent upon the permission of the city sexton, nor can he claim by virtue of the ordinance exclusive right to make the grave for her, even for reasonable compensation."

In People ex rel. Paxton v. Bloomington Cemetery Ass'n, supra, the Attorney General brought quo warranto to test the right of the cemetery under its charter to sell and deal in grave boxes and vaults. *Also* involved was the validity of a rule of the cemetery which prohibited interment except in grave boxes or vaults purchased from the cemetery. In striking down this rule the court said:

"If defendant has the power to prohibit a burial in its cemetery in a vault or box other than one furnished by it, it can be said with equal force that it has the right to limit the use of caskets and other funereal vestments to such as it saw fit to furnish. . . . The rule adopted by defendant to prevent the use of grave-boxes or vaults except those furnished by it is an unreasonable abridgment of the rights of lot owners."

74

Cited in support of the foregoing by the Supreme Court are the cases of Chariton Cemetery Co. v. Chariton Granite Works, 197 Iowa 403, 197 N. W. 457, and Scott v. Lakewood Cemetery Ass'n, 167 Minn. 223, 208 N. W. 811. The former involved a regulation prohibiting the installation of foundations for monuments except by cemetery employees, and is a leading case in the country on the validity of rules and regulations similar to the one in the case at bar. The latter case involved a rule of the cemetery, requiring a lot owner to employ only employees of the cemetery to care for and decorate graves. In both instances the rules were held to be unreasonable.

And quite recently, in People ex rel. Monument Co. v. Rosehill Cemetery Co., 3 Ill.2d 592, 122 N.E.2d 283, the Supreme Court held that the principles announced in the Bloomington case, supra, were still controlling in Illinois.

█ Upon a reconsideration of the case at bar, we have concluded that the foregoing cases control the factual situation presented by this appeal and that the findings and decree of the Circuit Court were correct. Being of this opinion we find it unnecessary to decide the question of laches and waiver.

The decree of the Circuit Court is accordingly affirmed.

Affirmed.

HIBBS, J., took no part in this opinion.